**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALDEN MANAGEMENT, | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| v. | ) | No. 06 C 1262 |
| | ) | |
| ELAINE CHAO, Secretary of | ) | |
| Labor, United States Department | ) | |
| of Labor; and UNITED STATES | ) | |
| DEPARTMENT OF LABOR. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Plaintiff Alden Management Services' ("Alden") Motion for

Summary Judgment and Defendants the Secretary of Labor's and the United States Department

of Labor's (collectively "the DOL") Cross-Motion for Summary Judgment. For the reasons

below, the Court denies Plaintiff's Motion for Summary Judgment and grants Defendants'

Cross-Motion.

## BACKGROUND

**I.        Statutory Scheme**

This case concerns the Immigration Nursing Relief Act of 1989 ("INRA"), 8 U.S.C. §

1101 *et seq*., and regulations promulgated by the DOL pursuant to that statutory scheme. The

INRA, which was enacted as an amendment to the Immigration and Nationality Act, created an

admission program ("the H-1A program") for foreign nurses to alleviate a national shortage of

registered nurses in the United States. *See Beverly Enters. v. Herman,* 119 F. Supp. 2d 1, 2

(D.D.C. 2000)(citing legislative history of the INRA). The H-1A program allowed qualified

registered nurses from foreign countries to come to the United States to work as non-immigrant

aliens for a period of up to five years, so long as certain "attestation" conditions were met. *See id.*; 8 U.S.C. § 1101(a)(15)(H)(i)(a); *id.* § 1182(m)(2)(A). Under this framework, a facility that wanted to employ alien nurses had to attest to a number of conditions, including that: (1) the employment of the alien would not adversely affect the wages and working conditions of registered nurses already employed at the facility; and (2) the facility would pay the alien the wage rate for registered nurses similarly employed by the facility. *See id.* § 1182(m)(2)(A)(ii), (iii).

The statute authorized the DOL to promulgate regulations to carry out the INRA. *See id.* § 1182(m); *Beverly Enters. v. Herman*, 50 F. Supp. 2d 7, 10 (D.D.C. 1999).

## II. Undisputed Facts

Alden Management Services, Inc. ("Alden") is an Illinois corporation that provides health-care management services to seven nursing homes in the Chicago area. (R. 46-1, Def's Resp. To Pl's Local Rule 56.1 Statement of Material Facts, at ¶ 1.) Among other services, Alden provides financial services and support, regulatory support, risk management services, nursing and dietary support, and assistance in employment matters to nursing homes. (R. 52-1, Pl's Resp. To Def's Local Rule 56.1 Statement of Material Facts, at ¶ 4.) Alden owns five of the seven affiliated nursing homes to which it provides services. (*Id.*)

During the time period from 1992 to 1995, Alden filed "attestations" with the appropriate authorities seeking to hire foreign nationals from the Philippines as registered nurses to work at nursing homes in Illinois. (*Id.* at ¶ 5.) The seven Alden affiliated nursing homes eventually employed 119 nurses from the Philippines. (*Id.* at ¶¶ 5-6; R. 46-1, at ¶ 7.) The nursing homes employed the nurses variously as certified nurse aids ("CNAs") and registered nurses license

pending ("RNLPs") and paid them a lower wage rate than that of a registered nurse.  (*Id.* at 6.)

In April 1995, the United States Department of State ("State Department") sent the DOL a telegram indicating that an alleged agent of Alden had offered a potentially improper payment to a consular official in the Philippines.  (R. 46-1, at ¶ 11.)  The telegram further alleged that: (1) one of the nurses had entered the United States pursuant to Alden's attestation but discovered that no position was available upon her arrival; (2) the consular official had phoned several of Alden's affiliated facilities and learned that no nursing shortages existed at those facilities at the time of the telephone call; and (3) certain nursing registries may have filed attestations but paid the nurses for less than full time employment.  (*Id.* at ¶¶ 12-14.)  The telegram also stated that "Alden issued employment contracts with vague and non-specific wording."  (ALD 002385.)  Thereafter, the DOL launched an investigation into whether Alden failed to pay the 119 nurses the appropriate wages, as prescribed by the INRA.  (*Id.* at ¶ 16.)

## III.    Procedural History

This case comes before the Court following lengthy administrative procedures.  On April 3, 1996, the DOL issued a Determination Letter finding that Alden had violated the INRA.  (*Id.* at ¶ 16.)  The Determination Letter concluded that Alden's hiring, employment, and compensation of non-immigrant nurses under the H-1A program, including its failure to pay foreign nurses at the wage rate paid to other similarly employed registered nurses, violated the INRA.  (*Id.*)  Alden requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ eventually issued a decision dated November 19, 1999, reducing the damages assessed against Alden but affirming the findings that Alden had violated the INRA.  (*Id.* at ¶¶ 20-23.)

### A. The Administrative Review Board

Alden and the DOL petitioned for review of the ALJ's decision by the DOL's Administrative Review Board ("ARB"), and on August 30, 2002, the ARB affirmed the ALJ on liability, but reversed the ALJ's conclusion that the period for calculating back pay was limited to one year. (*Id.* at ¶¶ 24-25.) The ARB held that Alden was liable for back pay for the entirety of the period during which the 119 nurses worked at Alden, and it remanded the matter to the ALJ for the purpose of calculating back pay consistent with the ARB's order. (*Id.* at ¶¶ 24-28.)

On December 20, 2005, the ALJ issued its Decision and Opinion on Remand in which it accepted several stipulations submitted by the parties on the amount of back pay owed, and ordered Alden to pay $1,041,823.90 in back pay and a $40,000 civil penalty. (*Id.* at ¶ 30.) Alden filed its Complaint with this Court on March 8, 2006, seeking judicial review of the agency's decision pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706. Alden now brings this Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, seeking reversal or substantial modification of the final agency actions.

### B. The ARB's August 30, 2002 Decision

Alden argues that the ARB erred in each of the following holdings. First, the ARB held that the State Department is an "aggrieved person or organization" under the INRA. (R. 15-3, ARB August 30, 2002 Decision and Order of Remand, at page 1.) Second, the ARB held that Alden is a "facility" as defined by the INRA and its supporting regulations. *Id.* Third, the ARB held that the DOL had reasonable cause to investigate Alden's activities. *Id.* Fourth, the ARB upheld the ALJ's decision that the DOL has the authority to conduct "directed investigations." *Id.* Finally, the ARB reversed the ALJ's decision and held that the period for calculating back

pay wages is not limited to one year.  *Id.* at pages 1-2.

## LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  When presented with cross-motions for summary judgment, the court considers the motions simultaneously and draws all reasonable inferences in favor of the party opposing a particular motion.  *Buttitta v. City of Chicago*, 803 F. Supp. 213, 217 (N.D. Ill. 1992), *aff'd*, 9 F.3d 1198 (7th Cir. 1993).

The Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*, sets out the standards for reviewing federal agency action.  An agency may articulate its policies through its adjudicative process or through regulations.  *See Bullwinkel v. FAA*, 23 F.3d 167, 171 (7th Cir. 1994) (citing cases).  "Considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer."  *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984); *Ali v. Achim*, 468 F.3d 462, 468 (7th Cir. 2006).  Under 5 U.S.C. § 706, the Court may overturn an agency's interpretation of law only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see Chao v. Gunite Corp.*, 442 F.3d 550, 556 (7th Cir. 2006).

In analyzing an agency's interpretation of a statute, the Court first applies traditional

tools of statutory construction to the language of the statute to determine its plain meaning. *Chevron*, 467 U.S. at 843 n.9. The agencies interpretation of the statute must not conflict with the plain meaning of the statute. *Sullivan v. Everhart*, 494 U.S. 83, 88-9 (1990); *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291-292 (1988). If Congress' intent is not clear, the Court determines whether the agency's answer is based on a permissible construction of the statute. *See Chevron*, 467 U.S. at 843; *Ali*, 468 F.3d at 468; *see also Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512 (1994); *Paragon Health Network, Inc. v. Thompson*, 251 F.3d 1141, 1145 (7th Cir. 2001). The Court may look to the legislative history of the statute to determine whether the agency's interpretation is permissible. *See Chevron*, 467 U.S. at 845; *Harrell v. United States Postal Serv.*, 445 F.3d 913, 924 (7th Cir. 2006); *Square D Co. v. Comm'r*, 438 F.3d 739, 745 (7th Cir. 2006). The Court must uphold an agency's permissible interpretation even if it differs from the construction the Court would have given the statute if the question initially had arisen in a judicial proceeding. *See Ali*, 468 F.3d at 468 (citing *Chevron*, 467 U.S. at 843 n.11).

The Court sets aside agency findings of fact only if "unsupported by substantial evidence." 5 U.S.C. § 706(2)(E); *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 377 (1998)). The Court reviews the whole record or those parts of it cited by the parties to determine if substantial evidence exists. 5 U.S.C. § 706. Substantial evidence "is no more than such relevant evidence as a reasonable mind might accept to support a conclusion." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). Under this standard, the question is "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *See Highway J Citizens Group v. Mineta*, 349 F.3d 938, 953 (7th Cir. 2003).

# ANALYSIS

## I.      The State Department's Telegram

Alden contends that the State Department's April 1995 telegram failed to provide the DOL with jurisdiction to investigate Alden's activities.  Alden does not contend that the telegram fails to qualify as a complaint on its face,[1] but rather attacks the telegram on four grounds: 1) Alden is not a "facility" under the INRA; 2) the State Department is not an "aggrieved party or organization" under the INRA; 3) the State Department telegram failed to provide reasonable cause to investigate; and 4) even if the telegram was a proper complaint, the DOL's investigation improperly exceed the scope of the allegations in the complaint.

Alden's arguments relate to the interpretation of 8 U.S.C. § 1182(m)(2)(E)(ii), which states in relevant part:

> The Secretary of Labor shall establish a process, including reasonable time limits, for the receipt, investigation, and disposition of complaints respecting a facility's failure to meet conditions attested to or a facility's misrepresentation of a material fact in an attestation. Complaints may be filed by any aggrieved person or organization (including bargaining representatives, associations deemed appropriate by the Secretary, and other aggrieved parties as determined under regulations of the Secretary).  The Secretary shall conduct an investigation under this clause if there is reasonable cause to believe that a facility fails to meet conditions attested to....

8 U.S.C. § 1182(m)(2)(E)(ii).  As discussed above, the ARB ruled against Alden on each of these four issues, and Alden now asks the Court to reverse the ARB's holdings.  The Court addresses each of Alden's arguments in turn.

## A.      Definition of "Facility"

---

[1]The ARB ruled that the telegram meets the facial requirements of a complaint under INRA, and Alden does not challenge that holding.  The Court notes that the telegram did meet the facial requirements for a complaint, as defined by the INRA regulations.  *See* 29 C.F.R. § 655.405(b) ("No particular form of complaint is required...").

Alden first argues that it is not a "facility" within the meaning of the INRA and therefore Alden's activities fall outside the DOL's authority to investigate "complaints respecting a ***facility's*** failure to meet conditions attested to or a ***facility's*** misrepresentation of a material fact in an attestation." 8 U.S.C. § 1182(m)(2)(E)(ii). A regulation implementing the INRA defines a facility as follows:

> Facility means a user of nursing services with either a single site or a group of contiguous locations at which it provides health care services. "Facility" includes an employer of registered nurses which provides health care services in a home or other setting, such as a hospital, nursing home, or other site of employment, not owned or operated by the employer (*e.g.*, a visiting nurse association or a nursing contractor)

20 C.F.R. § 655.302. The INRA, as it was in effect at the time Alden participated in the program,[2] further stated that the term "facility shall include the petitioner..." 8 U.S.C. § 1101(a)(15)(H)(i)(a). The ARB underwent a thorough analysis of the statutory language and regulations before concluding that "[a]s a consequence of petitioning for H-1A visas [... Alden] became a 'facility' by virtue of the clear language of 8 U.S.C. § 1101(a)(15)(i)(a). The Court agrees. The statutory language is clear and unambiguous. Because Alden petitioned to bring immigrant nurses to the United States under the INRA, Alden qualifies as a "facility" under 8 U.S.C. § 1101(a)(15)(H)(i)(a).

### B.    Aggrieved Party or Organization

Alden next argues that the State Department is not an "aggrieved party or organization" and therefore was unable to lodge a complaint under the INRA. The INRA authorizes the DOL to conduct investigations pursuant to complaints and further states that "[c]omplaints may be

---

[2] A November 12, 1999 amendment to the INRA deleted section 1101(a)(15)(H)(i)(a). Alden filed attestations under the INRA program in 1992, 1993, 1994, and 1995. (R. 52-1, at ¶ 5.)

filed by any aggrieved person or organization (including bargaining representatives, associations deemed appropriate by the Secretary...)." 8 U.S.C. § 1182(m)(2)(E)(ii).

Although the DOL has never issued a regulation defining this phrase, the ARB determined both in its December 2005 decision in this case and in a prior holding that the State Department qualifies as an "aggrieved party or organization" under Section 1182(m)(2)(E)(ii). (R. 15-3, at page 3; R. 44-2, *Beverly*, ARB Case No. 99-050, at pages 13-14). In its opinion in *Beverly*, the ARB conducted a reasoned and thorough analysis which analyzed both the history and the intent of the INRA, and concluded that "giving a broad interpretation to the term 'aggrieved person or organization' serves the purposes of the INRA of protecting domestic labor markets and assuring proper compensation to alien nurses, as well as preventing ineligible aliens from entering the country." *Id.*

The INRA grants the DOL broad discretion to define "aggrieved party" and the Court finds nothing in the statutory language or framework that precludes the State Department from qualifying as an "aggrieved party or organization." Accordingly, the Court defers to the ARB's permissible interpretation that the State Department qualifies as an "aggrieved party or organization" under 8 U.S.C. § 1182(m)(2)(E)(ii).

Alden cites *Director v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 130 (1995) for the proposition that a government agency is not an "aggrieved party." In *Newport News*, the Supreme Court interpreted the phrase "aggrieved party" under the Longshore and Harbor Worker's Compensation Act ("LHWCA") in resolving the question of standing for judicial review purposes. *See Newport News*, 514 U.S. at 130. The Supreme Court's interpretation of the phrase in the statutory context in which it arose in that case, however, is not

helpful for the Court's analysis here. As the Supreme Court noted in *Newport News,* different statutes may use phrases differently. *See id.* ("[T]he text of a particular statute could make clear that the phrase is being used in a peculiar sense with different Congressional mandates for a narrow interpretation of 'aggrieved party.'"). The Supreme Court's analysis in *Newport News* entailed a very context specific interpretation of the phrase "aggrieved party" under a wholly unrelated statute and in an entirely different context than the Court's analysis under the INRA. Moreover, the Court gives great deference to the DOL and will not substitute its own interpretation for that of a permissible agency interpretation. *See Ali*, 468 F.3d at 468 (citing *Chevron*, 467 U.S. at 843 n.11).

###### C.  Sufficiency of the Allegations in the Complaint

Alden next challenges the ARB's finding that the State Department telegram contained sufficient allegations to warrant an investigation under the INRA.  (R. 15-3, at page 4.)  Alden contends that the State Department's telegram failed to provide "reasonable cause" for the DOL to conduct its investigation, and therefore the DOL exceeded its authority under the regulations. The regulations state that the DOL "shall conduct an investigation ... if there is reasonable cause to believe that a facility fails to meet conditions attested," s*ee* 20 C.F.R. § 655.302, and further describe a complaint as follows:

> No particular form of complaint is required, except that the complaint shall be written or, if oral, shall be reduced to writing by the Wage and Hour Division Official who receives the complaint.  The complaint shall set forth sufficient facts for the Administrator to determine what part or parts of the attestation or regulation allegedly have been violated.

29 C.F.R. § 655.405(b).  The parties do not contest that these regulations require a complaint to state an allegation which, if true, would constitute a violation of INRA.

The ARB concluded that the telegram contains information that "relates directly to

conditions which [Alden] attested and suggests, at least, possible violations of those conditions."

Having reviewed the telegram, the Court finds substantial evidence to support the ARB's

decision. The subject line of the telegram, for example, reads "attempted bribe by H-1A

petitioner: Alden Management Services." The telegram goes on to explain potential violations

of H-1A attestations by Alden, including an alien nurse's allegation that she was brought to

Chicago to work in an Alden facility but found no work. Moreover, the telegram noted

"discrepancies" and "vague and non-specific wording" in Alden applications and "conflicting

information" from Alden personnel. The ARB reasonably concluded that all of the allegations in

the telegram add up to reasonable cause to suspect that Alden was engaging in activities

violative of its INRA attestations. Because the ARB's conclusion that reasonable cause existed

to investigate Alden was not a clear error of judgment, the Court denies Alden's motion on this

point.

### D. Scope of the Complaint

Finally, Alden argues that even if the State Department's telegram was a proper

complaint under INRA, the DOL investigation impermissibly exceeded the scope of the

telegram. According to Alden, "none of the findings of liability and damages in this case

derived from any of the allegations in the [State Department's telegram]." (R. 40-1 at page 16.)

For the reasons stated above, the Court disagrees. Substantial evidence supports the ARB's

conclusion that the telegram provided reasonable cause to suspect that Alden acted contrary to

its H-1A attestations.

## II. Investigative Authority in the Absence of a Complaint

Alden next challenges the ARB's holding that the INRA authorizes the DOL to conduct

investigations in the absence of a complaint. The INRA itself is silent on this issue. The ARB previously determined in *Beverly* that Congress had authorized directed investigations. *See* R. 44-2, *Beverly* ARB Case No. 99-050, at page 5.

Specifically, in its *Beverly* decision, the ARB analyzed the legislative history of the INRA and concluded that Congress intended for the DOL to conduct directed investigations. *Id.* (reviewing legislative history and intent). The House Judiciary Committee report on the bill that became the INRA, for example, states that "[i]nvestigations may be initiated in two instances: (1) through the Secretary of Labor when there is reasonable cause to believe a facility fails to meet conditions of the attestation, and (2) upon the filing of a complaint by an aggrieved party." 1989 U.S.C.C.A.N. at 1900.

The ARB's *Beverly* decision also noted that the DOL regulations authorize investigations in the absence of a complaint. (R. 44-2, *Beverly* ARB Case No. 99-050, at page 5.) As an initial matter, 20 C.F.R. § 655.400(b) states that "[t]he Administrator, either pursuant to a complaint *or otherwise*, shall conduct such investigations as may be appropriate...." 20 C.F.R. § 655.400(b)(emphasis added). The ARB then conducted a thorough and reasoned analysis of the meaning of the phrase "or otherwise" and concluded that it authorized the DOL to investigate in the absence of a complaint. (R. 44-2, *Beverly* ARB Case No. 99-050, at page 4-10.)

Alden does not challenge the ARB's analysis of the legislative history or its interpretation of the "or otherwise" regulation, but rather cites two decisions for the proposition that "Courts may not presume a delegation of power from Congress absent an express withholding of such power." *Railway Labor Executives' Assoc. v. National Mediation Bd.*, 29

F.3d 655 (D.C. Cir. 1994) (en banc), *cert. denied*, 514 U.S. 1032 (1995); *American Petroleum Institute v. EPA*, 52 F.3d 1113, 1119 (D. C. Cir. 1995).

While Alden cites an important principle of administrative law, the decisions Alden relies on for application of this principle are distinguishable from the present case. In *Railway Labor Executives Assoc.*, for example, the legislative history of the statute at issue indicated Congress' clear intention to prohibit direct investigations by the agency. *See Railway Labor Executives' Assoc.*, 29 F.3d at 668. The legislative history of the INRA, as discussed above, warrants just the opposite conclusion. Further, in *American Petroleum Institute*, the court struck, as beyond the agency's power, a rule promulgated by the EPA which was both unsupported by the legislative history and failed to serve the purpose of the statute in question. *See American Petroleum Institute*, 52 F.3d at 1117-1119. Here, the ARB's ruling that the DOL may investigate INRA abuses in the absence of a complaint is both supported by the legislative history and furthers the purpose of the statutory scheme.

Although the language of the INRA is not clear as to whether the DOL may investigate in the absence of a complaint, the DOL's regulation and interpretation of that regulation is reasonable in light of the legislative history and purpose of the INRA. *See Harrell*, 445 F.3d at 924 (relying on legislative history); *Square D Co.*, 438 F.3d at 745 (same). Accordingly, the Court defers to the agency's interpretation.

## III.    Back Pay Liability

Alden last argues that it is not required to compensate the alien nurses for back wages, even though Alden admittedly paid the nurses less than the registered nurse wage rate. In essence, Alden argues that although it attested that it would pay the alien nurses the wage rates

for registered nurses, the alien nurses never performed registered nursing duties and therefore

Alden was not required to pay them the registered nursing wages.  Alternatively, Alden argues

that the Court should limit the back wages to either one or two years.

### A.  The Statutory Provision

The INRA's back pay provision states:

> ... if the Secretary of Labor finds, after notice and an opportunity for a hearing, that a
> facility has violated the condition attested to under subparagraph (A)(iii) (relating to
> payment of registered nurses at the prevailing wage rate), the Secretary shall order the
> facility to provide for payment of such amounts of back pay as may be required to
> comply with such condition.

8 U.S.C. § 1182(m)(2)(E)(v).  Importantly, subparagraph (A)(iii) states that "***the alien*** employed

by the facility will be paid the wage rate for registered nurses similarly employed by the

facility."  8 U. S. C. § 1192(m)(2)(A)(iii) (emphasis added).

There is no question that Alden failed to pay "the aliens employed by the facility" at the

wage rate for registered nurses.  Nor do the parties dispute that Alden attested that it would pay

the aliens employed by the facility at the registered nurse wage.  Rather, Alden argues that back

pay is inappropriate because most of the alien nurses never worked as registered nurses.  This

argument misses the mark.  The INRA requires a facility to pay "alien[s] employed by the

facility [pursuant to H-1A attestations]" the wage rate for registered nurses.  Alden attested that

it would pay the alien nurses the registered nurse wage rate and it failed to do so.  The statute

supports the ARB's holding that Alden must pay back wages.

### B.  Limitations on the Back Pay Provision

Alden next contends that the ARB erred in determining the period for which the back

wages are due.  The INRA does not contain an express provision establishing the recovery

period for back pay.  In the absence of a clear time limitation on the back pay recovery period, the ARB held that Alden must pay back-payments to the 119 nurses for the entire period of time they were employed by Alden.  (R. 15-3, at pages 14-15.)

The ARB's holding is consistent with the clear wording of the INRA, which states that "the Secretary shall order the facility to provide for payment of such amounts of back pay as may be required to comply with such condition."  *See* 8 U.S.C. § 1182(m)(2)(E)(v).  The ARB reasoned that because Alden attested that the nurses would be paid full time registered nurse wages, that Alden must pay the difference between what the nurses were actually paid and what they would have been paid if Alden had lived up to its attestations.  The ARB's holding is both reasonable and consistent with the statutory language.

Alden argues that the Court should limit back pay damages to some period of time short of the entire period the nurses were in the INRA program.  Alden argues first that Court should limit the recovery period to one year from the date the DOL filed its complaint (April 1994 through April 1995).  In support of this argument, Alden points to a one year statute of limitations for H-1B classifications under the INRA.  Alternatively, Alden argues that the Court should limit the back pay recovery to the two year period in which the DOL conducted its investigation.  Alden offers no support for this argument.

The Court has considered Alden's arguments but finds them unpersuasive.  Nothing in the express language of the INRA, the legislative history or purpose of the statute, or the DOL regulations and decisions impose a limitation on the back pay recovery period to anything short of what would make the alien nurses whole.  Thus, the ARB's decision to limit back pay only to the extent the alien nurse is made whole is both reasonable and permissible under the statute.  As

such, the Court denies Alden's motion to limit the back pay recovery period.

## CONCLUSION

For these reasons, the Court denies Plaintiff Alden's Motion for Summary Judgment and grants Defendant DOL's Cross-Motion for Summary Judgment.

**Dated:**          October 23, 2007

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**